IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 16-95-BLG-SPW |
| Plaintiff, | |
| vs. | OPINION and ORDER |
| THOMAS GENE EDWARDS, | |
| Defendant. | |

On June 3, 2016, Deputy David Christensen of the McKenzie County South Dakota Sheriff's Office, stopped a truck driven by Defendant Thomas Gene Edwards. A pat-down search revealed drug paraphernalia and a subsequent search of the truck revealed guns and methamphetamine hidden in the truck. Edwards moves to suppress the incriminating evidence. (Doc. 26). Edwards argues that Christensen unreasonably prolonged the traffic stop and conducted an improper pat-down search. This Court held a hearing on February 14, 2017. At the hearing, the Court heard from Deputy Christensen and Fairview Police Officer Liza Harmon. After considering the parties' arguments and briefing, the Court DENIES the motion.

1

I. **Background**

On the evening of June 3, 2016, Deputy Christensen pulled over a green pickup for driving on Highway 200 without its rear registration lamps illuminated. (Doc. 30-2 at 1). The driver of the truck identified himself as Edwards. He told Deputy Christensen that he had borrowed the truck. (*Id.*). The passenger, later identified as Autumn Mist Guerrero, told Deputy Christensen that Edwards was driving her home. Deputy Christensen obtained Edwards' driver's licence, but Guerrero did not have any identification. Instead, she gave Deputy Christensen her married name, Autumn Vonnerheide, and date of birth. (*Id.*)

During these initial introductions, Deputy Christensen noticed that Guerrero was attempting to position her torso in between him and some bags located on the floorboard of the passenger seat. (*Id.*). Based on his training and experience, this behavior made Deputy Christensen suspect a gun was in the vehicle. (*Id.*) He radioed for assistance and requested that Fairview Police Department Officer Liza Harmon assist him. (*Id.*).

Deputy Christensen went back to his patrol car and ran Edwards' name through the National Criminal Information Center (NCIC), which indicated that Edwards had a restraining order out of Montana for a female. (*Id.*) NCIC also listed an officer caution warning regarding Edwards, indicating that he had exhibited violent tendencies. NCIC produced no information when Deputy

2

Christensen input the name and date of birth Guerrero had provided. (*Id.*). Deputy Christensen testified that he believed she had provided him with a false name. This raised his concerns with respect to Edwards' restraining order because Deputy Christensen could not determine if Guerro was related to the restraining order and was in danger.

Given the information he had learned about Edwards and his inability to verify Guerrero's identity, Deputy Christensen decided to interview the two separately to make sure that Guerrero was not the female associated with the restraining order against Edwards. (*Id.*). He told Edwards this and asked Edwards to get out of the truck. (*Id.*) He brought Edwards to the front of his patrol car and asked him if there were any illegal items in the truck. Edwards told him no. When Deputy Christensen asked for consent to search the truck, Edwards refused and told him that he had just gotten the truck and whatever illegal items it contained were not his. (*Id.*). He asked Edwards about the restraining order. While he was talking with Edwards, Officer Harmon arrived on the scene to assist. (*Id.*).

Deputy Christensen asked Officer Harmon to attempt to identify the passenger. Officer Harmon testified that Guerrero told her that she gave Deputy Christensen her married name, but that her license might list her maiden name. Guerrero also told Officer Harmon that she had an expired license out of California and a Montana identification card. Officer Harmon told Deputy Christensen, who

asked her to run the new name through NCIC. Officer Harmon went to her patrol car and ran the name.

While Officer Harmon was running Guerrero's name through NCIC, Deputy Christensen finished up his interview with Edwards. He asked Edwards to consent to a pat-down search before he turned his back on Edwards to interview Guerrero. Edwards complied. As he was patting Edwards' right pocket, Deputy Christensen felt a small cylindrical object. Edwards told him that it was some broken glass he had picked up off the ground. Deputy Christensen suspected that the object was a knife. According to his report, Deputy Christensen removed the object from Edwards pocket for officer safety and saw it was a broken meth pipe with burnt residue in it. From Deputy Christensen's dash cam video, however, it appears that Edwards removed the broken pipe from his pocket and simultaneously, Deputy Christensen saw the pipe, took it, and placed it on the patrol car.

Deputy Christensen immediately placed Edwards into handcuffs. He asked Officer Harmon to detain Guerrero. He advised them of their Miranda rights and asked Guerrero if any other illegal items were in the truck. She ultimately told him that there was a handgun in the truck and illegal items in a purple bag. Guerrero also told them that Edwards made her fear for her and her children's lives. Deputy Christensen and Officer Harmon searched the truck and found methamphetamine, baggies, scales, and cash. (*Id.* at 2).

4

## II. Discussion

Edwards makes two arguments in support of his motion. First, Edwards argues that Deputy Christensen unreasonably prolonged the traffic stop. Second, Edwards argues that Deputy Christensen conducted an improper pat-down search. The Court will address the arguments separately.

### A. Whether the stop was justifiably extended.

Edwards does not contest that Deputy Christensen had reasonable suspicion to stop the truck. Edwards argues that Deputy Christensen unreasonably prolonged the stop when he failed to simply ask Guerrero while she was in the truck if she was the female related to Edward's restraining order. (Doc. 27 at 8). By failing to ask this simple question and receive a simple answer, Edwards argues that Deputy Christensen turned a reasonable stop into an illegal stop. (*Id.* at 9). The Court disagrees.

Once a valid stop occurs, there is no strict time limit placed on the duration of the investigative stop. *United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005). An officer is authorized to take the time reasonably required to complete the mission of the stop, including the ordinary inquiries incident to a traffic stop. *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015). Ordinary inquiries include "checking the driver's license, determining whether there are outstanding

warrants against the driver, and inspecting the automobile's registration and proof of insurance[.]" *Id.*

The officer may prolong the stop where there is independent reasonable suspicion justifying the prolongation. *Id.* Correspondingly, the duration of the detention may expand where new grounds for suspicion of criminal activity unfold. *Mayo*, 394 F.3d at 1276. In determining whether a traffic stop was impermissibly extended, courts consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). The Court must examine the "totality of the circumstances" surrounding the stop to determine if the prolonged detention was unreasonable. *United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008).

Here, the Court finds that the length of the traffic stop was reasonable under the circumstances. Although Deputy Christensen initially only suspected that Edwards had committed a minor traffic violation, he quickly developed sufficient facts to justify the prolonged detention. His inability to obtain the passenger's identity along with discovering an active restraining order against Edwards, and Edwards' tendencies towards violence, justified Deputy Christensen's further investigation into whether Guerrero was the woman involved with Edwards' restraining order and was possibly in danger.

Edwards' argument that Deputy Christensen should have expedited his investigation by simply asking Guerrero whether she was the female who had taken out the restraining order against Edwards ignores the factual circumstances with which Deputy Christensen was confronted. At that point in the investigation, Deputy Christensen was operating off of the suspicion that Guerrero likely had given him a false name, since nothing had turned up in NCIC with the information she provided him. That suspicion combined with the fact that Deputy Christensen knew that Edwards had a tendency towards violence as well as resisting arrest and obstruction convictions, made it reasonable for Deputy Christensen to interview Guerrero separate from Edwards so that she could speak freely, if in fact she had taken out the restraining order.

In reviewing the totality of the circumstances, the Court finds that the investigatory stop was not unreasonably prolonged. The Ninth Circuit has held that an ordinary traffic stop could reasonably take 14 minutes. *Turvin*, 517 F.3d at 1102. Although Edwards' traffic stop took longer than that, it was not an ordinary stop. Deputy Christensen acted diligently to dispel or confirm his suspicions that Guerrero was traveling with Edwards against her will and Edwards was in violation of a restraining order. While this decision did prolong the stop, it was reasonable and necessary to ensure Guerrero's safety under the circumstances.

**B.     The Pat-Down Search**

7

Next, Edwards argues that Deputy Christensen's pat-down search does not comply with the so-called *Terry* standards for stop and frisk. *See Terry v. Ohio*, 392 U.S. 1 (1968); (Doc. 27 at 10). Again, the Court disagrees.

Because traffic stops are "especially fraught with danger to police officers," officers must exercise unquestioned command of the situation to reduce risk of harm to the police and to the individuals stopped. *Arizona v. Johnson*, 555 U.S. 323, 331 (2009). Accordingly, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* Once the driver is out of the vehicle, an officer is permitted to conduct a pat-down search for weapons if the officer reasonably concludes that the driver "might be armed and presently dangerous." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n 6 (1977).

"A protective search - permitted without a warrant and on the basis of reasonable suspicion less than probable cause- must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993). An officer is not authorized to search for anything other than weapons during a protective search. *Id.* But, failure to comply with officer instructions and furtive movements during a search can justify a more intensive search. *United States v.*

8

*Taylor*, 716 F.3d 701, 708 (9th Cir. 1983) (repeated furtive movements and failure to comply justified more invasive frisk). Also, "police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

Here, Deputy Christensen possessed reasonable suspicion to conduct a pat-down search. Deputy Christensen knew from NCIC that Edwards had tendencies towards violence and drug use. It was reasonable to infer from this information that Edwards might be armed and dangerous to Deputy Christensen. Further, Deputy Christensen intended to interview Guerrero, which meant that he would have his back turned to Edwards, making Deputy Christensen more vulnerable to attack. These circumstances made a pat-down reasonable for officer safety reasons.

Deputy Christensen's pat down was legal. When Deputy Christensen felt a cylindrical object in Edwards' pocket, Edwards told him it was a piece of broken glass. Deputy Christensen believed it was a knife. At that point, Deputy Christensen was warranted in searching Edwards' pocket out of concern for his own safety. *Cf Minnesota v. Dickerson*, 508 U.S. at 378 (1993) (recognizing that an officer's continued exploration of defendant's pocket *after having concluded that it contained no weapon* was impermissible) (emphasis added). As long as Deputy Christensen believed that the unknown object may have been a weapon e.g., a broken piece of glass or a knife, he was permitted to continue searching. *Id.*

9

Deputy Christensen would have been able to seize the pipe even if Edwards had not told Deputy Christensen that the object was a piece of glass, however. As is apparent in the video, Edwards pulled the pipe out of his pocket. At that point, Deputy Christensen was permitted to seize the pipe as evidence under the plain view doctrine. Either way, Deputy Christensen's search and subsequent seizure of the pipe was permissible.

## III. Conclusion

For the foregoing reasons, Edwards' Motion to Suppress (Doc. 26) is DENIED.

DATED this 14th day of February 2017.

SUSAN P. WATTERS
United States District Judge

10